The next case on the agenda this morning is number 16, and the number is 126666, Fletcher McQueen v. Levante M. Green, et al., which is Pan Oceanic Engineering Company, Inc. Mr. Michael Rastak for the appellant. In which the jury found that the driver of a truck that struck Mr. McQueen's vehicle was not guilty, but found that the driver's employer, Pan Oceanic, was guilty. And the appellate court ruled that that can't be the case. Because the appellate court said that once an employer admits vicarious liability, admits it's liable for the fault of its driver under respondeat superior, that forecloses any direct action against the employer. What the appellate court overlooked is that the employer's liability for vicarious liability is, of course, derivative. The employer, in the normal case that you would see in this kind of an accident, hasn't done anything wrong. The employer hasn't been guilty of a tort. And for that reason, when you sue the employee, if the employee's not committed a tort, well, then we already know by definition the employer hasn't committed a tort, so the employer can't be liable. But that was not this case. This case instead tracks situations we've seen more clearly, I think, in Longnecker. This is a situation in which, in this particular case, even though the jury found that the driver of the truck was not at fault, the employer was at fault because the employer did not train the driver. And it's a somewhat unusual circumstance, but not terribly unusual. We've hypothesized similar situations, and the Ferrer court hypothesized a similar situation. In this situation, because the driver wasn't properly trained, the jury was able to find that the driver did not do something or not do something that a reasonable person would do. The driver just didn't know what he was to do, and I think everybody agreed that how to handle a load on a truck like this turns out not to be something that was common knowledge to drivers. Ergo, when the jury found that the employer was, in fact, at fault, when the jury found that the employer, in fact, had not trained the driver, that was an independent cause of action. That was an independent tort. In this instance, Pan Oceanic was, in fact, guilty of tortious conduct. And when you are guilty of tortious conduct, that means you owed a duty to somebody and you violated that duty, and that's what occurred here. The appellate court noted that there hasn't been a specific case in Illinois that's addressed the distinction between failure to train, which is our case, and the other forms of what some courts. Mr. Rastak, is that the Van Horn case, the distinction? Yes. And a number of them. Negligent hiring, negligent retention, negligent entrustment have, in some instances, been called direct torts, and I think that created some of the confusion. They're not. In all of those instances, they require that the employee be, in fact, be at fault. And if the employer is at fault, I'm sorry, if the employee is at fault, then the employer is at fault. That was the distinction that the Ferrer court drew, a court, a case that the appellate court relied upon. In this instance, the employer's fault, the employer is, in fact, at fault, and its fault is not related to the employee's conduct, in the sense that, and just what I said, I think, provided some of the confusion below. The employer's fault is related to the employee's conduct, but the employer's fault is not related to employee fault, and that's the distinction, the critical distinction between the two types of fault here. You're going to have to help me on that one. That's a big challenge for me. In your brief, you talk about the Gantt case and specifically how Gantt sets out this idea that certain types of theories, negligent hiring, negligent retention, and negligent entrustment, are, in fact, derivative of conduct of the employee. But you make the point that failure to train is of a whole different quality and therefore not derivative of the employee's conduct. Help me understand that. I'm not sure I see the distinction. I think maybe I'm working a little bit in reverse. The employer's conduct in the other three instances is imputed to it as a matter of law. The employer has done nothing wrong. In terms of negligent hiring, negligent retention, negligent entrustment, directly, its fault can exist only if the employee in those cases did something wrong. And I'm actually thinking this as I'm standing here. In those instances, if the employer negligently hired me, the employer's conduct can't become tortious in the sense that there's no violation of duty until the employee has been guilty of negligence. In those instances, the employee must be guilty of negligence. In this instance, when you have negligent training, it's the only one of those instances where the employer is at fault for not training. But the employee is not negligent. In all the rest of the three cases, the employee is, in fact, negligent. And I can't figure out why there's this big distinction. Let's pretend that they never even sued the employee. Correct. It just sued the employer. Exactly. What duty does the employer have to the people on the road? What breach of that duty? How is that any kind of breach, failure to train the driver, causing the accident if, in fact, the driver did nothing wrong? Again, the driver, the employer owes a duty to the public. I think, I don't believe there's a dispute. An employer owes a duty to the public to train people that it puts in contact with the public. I don't believe that's an issue here. In an instance like this, the employee, and you're going to use the word wrong, and that's why I'm struggling with this. The employee, in a sense, did something wrong. The employee drove a load that shouldn't have been driven on the highway. It wasn't properly changed and didn't properly stop the vehicle. So he did something wrong, but it depends what you mean by something wrong. The employee did something that caused the accident, but he wasn't at fault. He wasn't the legal cause of the accident because he didn't, the jury found he didn't know any better. That was the argument that was made to the jury, and we assume that they bought it because they found the employee not guilty. So the employee did something wrong, but he didn't do something that was legally a cause, a legal cause of the accident. And if the employee was not a legal cause of the accident, then the jury properly found him not guilty. But the employer still did something. Unless the court is going to hold that an employer owes no duty to train, but that was the Longnecker case. In that case, if Your Honors recall, that's the hospital case. The doctor who went to harvest the heart, the doctor harvested the heart, gave it back to the, sent it back to the hospital. When the surgeon opened the box in that case, looked at the heart. After taking the heart out of the patient, it was the wrong heart. What the jury found was that it believed, just like in this case, that the harvesting surgeon didn't do anything wrong, and using Your Honors' term, didn't do anything that was tortious because that doctor didn't know better. Nobody had trained him. But the hospital who had trained him, which is the position we have the employer in here, did do something wrong, and it was guilty of tort. It was guilty of a direct tort. So the distinction between the three instances, the negligent hiring, negligent retention, negligent entrustment, and negligent training, falls, I think, within the sphere that in those instances, in those three instances, the employee probably needs to do something wrong in the sense the employee has to be guilty of a tort. In this case, the employee was found not guilty of a tort. And nobody's challenged that decision if the jury believed that he wasn't trained, just like the doctor in the Lone Necker case who harvested the heart. You could find that he did nothing wrong because he didn't do what you need to do to be negligent. Counsel, what distinguishes negligent training from negligent supervision and retention? Negligent supervision and retention are going to assume, I'm trying to think, negligent retention and negligent entrustment, negligent supervision, can only lead to employee, I'm sorry, employer fault if the employee did something wrong. Right. If the employee in all those instances did not do anything wrong, then the fact that I negligently supervised him or negligently hired him is irrelevant. Wasn't that the same thing we have here? I respectfully and emphatically disagree. That's our whole position. In this case, the employee did not know any better. And the other three cases that were instances we're talking about, we're talking about instances where the employee committed a tort. In this case, the employee did not commit a tort. That's the demarcation between the two. In negligent supervision, again, if I have negligently supervised my employee, but my employee didn't commit a tort, then I may have done something wrong, but I haven't committed a tort because there's been no injury. Resulting from what I did, the injury was due to the employee's tort. He didn't drive an unsafe vehicle? In this case, he did. Clearly. But the difference is, and that's why we went back to the lawnmower case, and we're assuming that's a question of fact. When he did it, he didn't know it was an unsafe vehicle. If Your Honor recalls, the evidence was that nobody trained him that a load could become unstable if it wasn't changed properly. Nobody told him what to do if it came loose. And he, in fact, was told by his employer, after he had some questions, come on back. He followed a direction. It was actually a direction from the employer in this case, which is even worse than negligent training. Even if they had negligently trained him, once the employer says you can do it, can't the jury then find that although the driver of the truck, if he had known better, could have prevented the accident, wasn't tortious in his conduct? Because like the doctor in Longnecker, he didn't know better, and you could find that it was reasonable for him not to know any better. One of the other cases involved running a red light. One of the terracotta involved crossing railroad tracks. Those are statutory duties. Whether I know not to run a stop sign or a red light, that's not a defense to me. I can't say nobody told me not to run a red light. In this case, and in some of the hypotheticals that the Farrar Court posed, I don't necessarily know that. If the jury looked at me and said, Ratzak, you had the training. You should have known that. You're guilty of a tort. But if the jury believes me when I say I had no training, and the jury believes it's something that a reasonable person, that being what we look at for definition of negligent, a reasonable person would not know that, then I'm not negligent. I have a problem with the approximate cause of the issue in this case. Yes, sir. If the driver's driving was not the approximate cause of this accident, then how could the employer be responsible, however inadequate the training, if the jury found that the driving was not the approximate cause of this accident? And I think the answer to that, Your Honor, is that the jury could have found that the driver of the truck was one of the approximate causes of the accident. There are multiple. But he was a cause in fact in the sense that if he had been in the truck, he wouldn't have been there. But he wasn't a legal cause of the accident, and if he's not a legal cause of the accident, then he's not liable in a tort. He hasn't committed it. I can only commit a tort if I'm a legal cause of the accident. If I don't know any better, I don't know. If I don't know better than to run through a stop sign, and I should know better, then I haven't violated a duty. Now, I use that silly analogy because I think it highlights it. In this case, the evidence was, and the jury accepted it, that it was reasonable. Otherwise, they would have found the driver guilty. They believed the driver when he said he didn't know any better. So, in fact, he was involved in the accident. The accident could happen without him. But it happened because the employer committed the tort, and that led to the accident. That's what I'm struggling with. How is the training relevant if the employee was not negligent? Because if he had been… The training evidently didn't matter one way or the other. It did. It wasn't negligent. If he had trained the driver, for example, at one point the driver said, if I had been told it was dangerous or I had not been told to come back, I wouldn't have done that. If he had been trained and knew what to do, the jury assumed that he would have done the right thing. Nobody challenged that he was a bad human being and he was not reckless. Counsel, how can we assume he didn't know what to do when he called his employer and he specifically said to him it did not look right? He knew something was wrong. He said it did not look right. Exactly. And he said it did not look right to him, and he called his employer, and his employer said, drive it anyway. And there's a second part to that answer, Justice DeVille, because there's a second part to the liability. It didn't end there. If the court recalls, the problem occurred when he looked in his mirror and saw the load begin to bounce, and he responded by putting on his brakes. He denied knowing what to do next. You do not put on your brakes. It's the exact wrong thing to do. You will do what happened here. The load comes loose, shifts. That's what everybody agreed. His own employer said, yes, we need to tell the drivers what to do in that situation, and if we didn't, it was reckless. It was that bad. So in that part of the case, even if I'm wrong on the first part of that liability, I've got to be right on that second part of the liability. He didn't know what to do. If he had been, you know, the answer to Justice Gardner's question, if he had known what to do, we wouldn't have had the accident. He would have lifted his foot off the brakes. He wasn't a legal cause of the accident. The jury could find that he didn't commit a tort, but they could find that the employer did. Otherwise, we have a situation where I don't think anybody that's ever read this case said there wasn't a tort committed here someplace, and it wasn't committed by Mr. McQueen. He is just driving his car on the highway. He is struck by a truck. There's no act of God involved. If the court goes down the path that we're talking about here, no one's liable. The jury can find the driver not liable because he didn't know better. Well, they pointed the finger at Patton. I'm sorry, I'm sorry. They pointed the finger at Patton. Correct. Okay, so, I mean, somebody theoretically is liable. I think the question here is, and maybe the difficulty at least I'm having, is this intersection of the mens rea of knowledge with negligence and how those things intersect. If I'm driving my car and my brakes are bad and I don't know it and I smash into someone, the fact that I didn't know it then is an absolute defense? No, not at all, because it's possible that you should have known your brakes are liable. I'm not saying that your brakes were bad. But the Ferrer court thought about that and they said, what if the employer gives the vehicle to the employee knowing the brakes are bad, it doesn't tell him? Now, that employee has no reason to know those brakes are bad. If he has an accident and he can convince the jury that the brakes were bad and he didn't know it, he will not be found guilty. It happens all the time. It's a defense to an auto case. I didn't do something wrong. Then you have to show that the person should have known the brakes were guilty. That would be a defense. And so that's what I'm saying. If this Court goes down that path, we're going to have a situation where the jury is going to believe a driver isn't at fault, but neither is the employer. This Court would be rejecting the hypothetical that the Ferrer court set up, which the defense, we both agree, that case addresses this situation, except in that case they answered Your Honor's question. If I'm not wrong, and it is, there may be situations where the mens rea, what I know, is going to come into play. But that strikes me as being peripheral to the direct issue here. That may come down to a particular case. Rasek hasn't had his car serviced for 15 years. He's driving a junker. Now you're starting to look at the facts of a particular case. We've got, this Court has before, a particular case with a very specific set of facts that calls into play this one question. And... You've mentioned a couple times the piece of evidence where the driver felt there was something wrong and brought it to the attention of the employer, and the employer said, drive your truck anyway. Yes. Is that the theory of this case? That doesn't sound like failure to train. That sounds like maybe something else. How does that, what does that have to do with failure to train? Because the failure to train addresses two things. One is the step before that, they did not train him that that load was unsafe. If he had known that load was unsafe, he wouldn't have made the phone call. He just would have said no or had him redo it. So he made the phone call. So the lack of training started that little progression off. Not knowing the load was safe, beg him to ask the question, he got an answer and he came back. So he's not negligent. But the other lack of training is not telling him what to do when the load comes loose. He wasn't obeying anybody's instructions at that point. He was by himself. But could the jury have found some uninstructed way that when the employer said, you think there's a problem, you've got to drive that truck anyway, that that was some kind of negligence on the part of the employer and it has nothing to do with failure to train? You've got a couple different ideas swirling around here. It does, except that that little part of the case is predicated on initially on his failure to train him, that that load was unsafe. And he was the one looking at the load, not the employer. The jury could take those two conducts apart. And even if they did take those two conducts apart, the verdict would still stand against the employer because the employee arguably is not at fault. And we still have to address the braking issue, how to stop the vehicle. It's still out there. I mean, why the jury did what we did, we don't know for sure. But we won the case at the trial court level, so I don't have to. I have a two-issue rule of protection. I've clearly exhausted my time. Thank you. Thank you, Mr. Redson. Jennifer Lee Barron for the appellee. Good morning, Madam Chief Justice, members of the court, counsel. May it please the Court. My name is Jennifer Barron. I represent Defendant Appa Lee in this matter, Pan Oceanic Engineering Company. I'm here with my co-counsel, Daniel G. Suber. There are four reasons why the appellate court opinion should be affirmed in this case. First, the general rule in Illinois is that respondeat superior bars direct claims, including negligent training. Second, to permit a departure from this general rule would swallow the rule, and it would actually eviscerate respondeat superior. Third, even if, even if this Court should find that independent claims of negligent training are permitted over respondeat superior, there would still be no liability to Pan Oceanic in this case, because plaintiff cannot establish cause and fact. As Your Honors were discussing during my opposing counsel's presentation, all the negligent training in the world is irrelevant if it didn't cause the accident. And there was no finding here that Levanta Green or the negligent training was the cause in fact of the accident. Plaintiff wants to leapfrog over cause and fact and talk exclusively about legal cause, but there was no finding by the jury here that Levanta Green was even the cause and fact of the accident. There was no testimony at trial that crooked load was the cause of the accident. There was no testimony at trial that improperly secured load was the cause of the accident. There was no testimony at trial that the way Levanta Green broke or didn't break was the cause of the accident. There was no expert testimony about the cause of the accident. Only one witness ever testified about the cause of the accident, and it was Levanta Green, and he said he wasn't the cause and that it was a broken binder on the chain that secured the load. All the negligent training in the world isn't going to fix a broken binder. And finally, the jury instructions were flawed in this case, and the appellate court was quite correct in finding that Panos Janic was denied a fair trial and prejudiced by the faulty jury instructions. Now, to my first point, the general rule in Illinois and the majority of jurisdictions in the nation is that respondeat superior, once it's been admitted, as it was here, bars direct claims against the employer for negligent entrustment, hiring, retention, supervision, and training. What we're here today to examine is, is negligent training part and parcel of negligent entrustment and negligent supervision specifically? And the answer is yes. And the way we know that is from the case law in Illinois and the case law around the country. We also know it from the pleadings in this case, plaintiff's own pleadings and plaintiff's issues instruction and plaintiff's closing argument, which show that negligent training is part and parcel of negligent retention and negligent supervision. It cannot be separated. It cannot be divorced from the conduct of the employee. Just because there's overlapping claims that are exclusive to employers only does not mean that a second avenue of liability against the employer can lie in the face of respondeat superior. And finally, logic tells us that negligent training is part and parcel of negligent entrustment and negligent supervision. So looking at the case law, which has been extensively briefed by both parties, we know that as far back as 1945, a claim of negligent entrustment in the Rogina case was based upon, was based upon a finding, an allegation of negligent training. That was an element of negligent entrustment. And the Rogina court found that where the pilot in that case was found to be not negligent, the plaintiff's attempt to have an independent claim against the employer on negligent entrustment would be barred by respondeat superior, and the allegations of that negligent entrustment claim were training, because training is an element of negligent entrustment. More recently, the Northern District of Illinois has spoken on this case, examining Gant, applying Illinois law, and found in the Johnson case, Johnson v. First Student, that there was no meaningful distinction between negligent training, negligent entrustment. Sotomayor, is it proper to allow a defendant company to admit respondeat superior and then go to court at trial and argue, our employee didn't know any better, and in essence admit a lack of training, and then say, since our employee isn't liable, therefore we're not liable? Absolutely not. And actually, that's my fear, Your Honor, that if an independent claim of negligent training is allowed to lie concurrently in the face of respondeat superior, suddenly defendant employers will have a new avenue of defense that they didn't previously have, and you'll have a situation where potentially an employee could be found liable and not an employer, which would really eviscerate the whole point of respondeat superior, which is a broad, expansive, strict liability against employers. So I don't think that's the situation in this case. In this case, the negligence of Panosianik rose and fell with the negligence of the employee. They did argue, I mean, Panosianik did argue at trial, Levanta did not, he didn't think it looked funny that he never said it looked unsafe because he didn't know that. So they were arguing his lack of knowledge, in essence his lack of training. I'd answer that two ways. I disagree with the characterization that they were disagreeing with Levanta Green. Levanta Green said, I never said it was unsafe, and Savi Singh said he never said it was unsafe. And there was no testimony that it was unsafe. Plaintiff is certainly entitled to argue that to the jury, but there was no testimony by a single witness that that load was unsafe. In fact, plaintiff's own expert, Diaz, testified that a crooked load could be safe if it was secured properly. He did make some comments about it. Excuse me? He made comments about the load. Certainly. There's no question it was a crooked load. Defendant's position is that the crooked load was not the cause of the accident. The plaintiff cannot get around the insurmountable fact that the jury found no proximate cause here. So whether the load was crooked or secured or whether Levanta breaked or didn't break is irrelevant because the jury at trial found no negligence by Levanta Green. And plaintiff wants us to assume that's because they found no legal cause. But there was no special interrogatory on that question. The jury could have found that there was no cause in fact, and that would have been entirely consistent with all the testimony presented at trial. None of which linked the crooked load, the secured load, or the breaking to the cause of the accident. The only testimony as to the cause of the accident was that the binder broke. The State Trooper Horton, who investigated the claim, said there was no skid marks, which would support a breaking argument. And he said the cause of the accident was unknown. So get no one was involved. Well, it was a broken binder, or perhaps it was patent industries, which was also argued at trial. We can't know, but we're not here to obviously re-litigate or re-weigh the facts. We're faced with a situation where a jury found no proximate cause by the employee. And where there's no proximate cause by the employee, the employer cannot be liable for negligent training because there's no evidence that the negligent training caused the accident. If the jury believed that it was a broken binder that caused the accident, that has nothing to do with negligent training. And that would have been consistent. What would that have to do with the broken binder? I guess there could have been a products liability case against the binder manufacturer, or it could have just been a negligent or a situation that had no tortfeasor, a true accident. So based on the case law in Illinois that we've discussed somewhat already, as well as the case law from other jurisdictions, we know that negligent training is part and parcel of negligent entrustment and supervision. In other Illinois cases that looked not at the issue of respondeat superior, but at what negligent entrustment is and what negligent supervision is, those cases, Doe v. Coe, recent opinion from this Court, and Baumrucker, for example, both said negligent entrustment and negligent supervision in those cases included allegations of negligent training because negligent training is inextricably bound with negligent entrustment and negligent supervision. In the pleadings in this case, the plaintiff complaint had one count against Pan-Oceanic for negligence, not a separate count for negligent training. And that negligence count against Pan-Oceanic included claims of negligent hiring, negligent supervision, and negligent training. They were bound together. The issues instruction at C-1835 that was submitted over defendant's objections here included claims of negligent entrustment, supervision, and training. Again, the jury was instructed that those things were part and parcel of the same claim. And in the closing argument that plaintiff made in this case, negligent entrustment, training, and supervision were all bound together. The point is there are different facets of the same claim. And I think Justice Garmon asked Mr. Vasak, what distinguishes negligent training from negligent entrustment and supervision? And if I can answer that, the answer is nothing. It's an element of negligent training and negligent supervision. Plaintiff advocates for an exception, but such an exception would swallow the rule because it would overturn Gant, and it would also create a situation which I discussed a little earlier in answer to a question, that it would create a situation where an employee would be liable but not the employer. How would it overturn Gant? Gant, everyone agrees, barred direct claims against an employer for negligent entrustment, hiring, and retention. Those are all exclusive employer conduct. They include claims against the employee. They're derivative to and tethered to the conduct of the employee, but they include claims only against the employer. Here in this case, the burden of proof instruction didn't get in. Correct. How can you have a case like this without a burden of proof instruction? Isn't that sort of fundamental to these cases, this kind of case? Absolutely, Your Honor. The jury did not get a burden of proof instruction. We do agree with you and with the appellate court that that was a fundamental flaw in this case and denied Panoceanic a fair trial. Panoceanic did submit 2102, which the court rejected, and no substitute burden of proof was ever offered by the court. And this court in Mikolacek said that a tendered instruction is not the same as no instruction. So just because there has been argument about whether 2102 was the perfect And no burden of proof instruction was given in its place. As far back as Johnson v. City or Chicago City Railroad in 1911, Illinois courts have held how essential a burden of proof instruction is to a jury trial. Unlike a criminal case, this is a civil case, but burden of proof is such an essential instruction. How can a case stand without remanding it because no burden of proof instruction was given? I know it was tendered, refused, and then nothing else. Is there a point in a case where even in a civil case, when there's something this essential, it's the obligation of the trial judge to give an instruction like that? Absolutely. If not, that's an error. Yeah, that's what the court held in Grover, Your Honor, and I absolutely agree with you that that was a fundamental error in this case requiring reversal and supporting affirmance of the appellate court in this matter. Talking again about how the exception would swallow the rule here, because the negligence claims that Gant talks about include claims only against the employer, the plaintiff's argument is that negligent training is somehow different because it's exclusively against the employer. But certainly the same can be said about negligent hiring. Employee can't be found responsible for negligent hiring, yet that's clearly barred by Gant. So if we were going to make an exception for negligent training based on plaintiff's theory that it includes claims exclusive to the employer only, then surely such an argument would also have to apply to negligent hiring and negligent retention and negligent supervision, and that would effectively overturn Gant. And I don't think that's a result that's beneficial to any litigant in the state or to the general public. Right now we have clarity, reliability, and certainty. Litigants know the duties and responsibilities of employers and employees. People on the roadways know that if a truck owned by a company hits them, then that trucking company will be responsible if that trucker was the cause, in fact, of the accident, because respondeat superior is broad, expansive, strict liability. Respondeat superior in Latin means let the employer answer, let the employer take responsibility. And if we're going to have a new concurrent side action directly against the employer, that will provide all new defenses to the employer. And then we'll have the situation where an employee could be found liable, or an employer could throw the employee under the bus, so to speak, and the employer would not be liable. And if you allowed those claims concurrently, how would you craft jury instructions? How would you have verdict forms? How would you explain to a jury, well, the employer might be strictly liable but not directly liable, or directly liable but not strictly liable? It's already a confusing, rushed, difficult part of any trial is the jury instruction phase, and this would only add to that without any benefit to anyone. And then my third point is that, and we've touched on it already, there's no causal nexus here. Negligent training can't be an independent claim against the employer if it didn't cause the injury. Under Powell v. Dean Foods, a case cited here by the appellate court and both parties, the cause and fact of an accident has to be shown to a reasonable certainty. The misconduct of the defendant has to be shown to a reasonable certainty to have caused the injury. And that can't be shown here because it was disputed at trial, and an alternative theory was presented at trial that it was the binder on the chain. That's the mechanism that tightens the chain. Now, if the jury believed that or if the jury believed Patton was responsible, whatever the cause, if the jury didn't find that LaVonta Green was the cause in fact of the accident, respondeat superior, it doesn't even get triggered. It doesn't matter whether the liability alleged against Pan Oceanic was vicarious or direct because LaVonta Green was found to be not the cause of the accident. The last thing I wanted to touch on was plaintiffs spent a long time talking about Ferrer and the unknowing driver exception in Ferrer, and that that should apply here. But if you look at the text of the case of Ferrer, the negligent entrustment barred by respondeat Ferrer included negligent training. Those are the words used in Ferrer. In fact, at page 830, paragraph 30 of Ferrer, the court said vicarious and direct negligence are both tethered to the employee conduct. So obviously the exception in Ferrer that they contemplated, the hypothetical of entrusting a driver to a defective vehicle, could not include negligent training because they specifically included negligent training as a claim that they barred by respondeat superior under a theory of negligent entrustment. And the fourth basis for the affirmance of the appellate court opinion in this matter is the jury instructions that we discussed somewhat already. They were flawed in this case and prejudicial to Pan Oceanic and denied Pan Oceanic a fair trial. 5001, the short form was given to the jury, although defendant did tender the long form, which correctly reflected the law that if the jury found LaVonta Green to be not negligent, they would also have to find Pan Oceanic to be not negligent. Both the burden of proof and the 5001 instructions were tendered here, and defendant did not waive those instructions. But even if he had, even if he had, it would still be reversible error here, as this court found in Dillon, a case where the aggrieved party did not tender any instruction and did not object with specificity. The court still found a need for a just result overrides waiver. So for those reasons and those described more fully in our brief, we request that the opinion of the appellate court in this matter be affirmed. If there's no additional questions, I have nothing further. Thank you. First point I wanted to address was the question about the difference between negligent hiring and negligent supervision. If I didn't make it clear before, the difference is that in order to hold the employer at fault for negligent supervision, there has to be some fault on the part of the employee, otherwise there's no tort, because the employer is only being held responsible, can only be held responsible if the driver was negligent, not a cause, negligent. And those terms, cause, conduct, and negligence are all quite different. Negligent training requires that the employee not to do something because he wasn't or she wasn't told to do that, and the tort is the failure to train. And you don't, counsel said, well, here, the employee, the driver had to be a cause in fact, had to be a cause. There's a difference between cause and cause in fact, and cause and legal cause, and there's no tort on the part of that driver unless that driver committed a tort. And he did commit a tort unless he was negligent. He wasn't negligent if he didn't know better, just like the harvesting doctor and long necker. Is training part of supervision or supervision, is training part of supervision? As I wrote and went through this, the problem is the courts have kind of melded those together. I can hypothesize, I think, a supervision case, which would be very close to a training case. So Justice McMorrow, when she was on the appellate court years ago, lectured us and said, you know, it's not just enough to bring the court to the problem. Tell the court what rule you want. I think the rule here that I think answers your counsel's, your honor's question, is that the rule would be if the employer's fault is derivative, then there is no direct liability. If the employer's fault is not derivative, which is this case, then the employer can be found at fault and guilty of a tort. If not, then in a situation like this, nobody's liable. There was some question about, well, maybe Patton was liable. If we're going to go down that road, that brings us into the two-issue rule. Nobody, as counsel said, nobody put in a special interrogatory. So we can assume, there's no reason to not assume that the jury did not find exactly what I told the court, that the employee wasn't at fault because he wasn't properly trained. In this case, there was a problem because of the burden of proof of instruction, right? Yes, sir. And that was, exactly. And that was my next card. I didn't have time to get to it before. Of course, a burden of proof of instruction should be given. But there was an instruction given. I understand what your honor's going to say. I know what counsel said. But not in writing, not from the court. But three times defense counsel told this jury what the burden of proof was, who had it, and that they had to vote for him. This was not a Dillon case. In Dillon, there's the question about whether there was a waiver or not. This case is a garden variety accident case. Did this jury really need any more instruction to understand that when I run you over with my truck, you know, all you have to do is prove I'm not at fault? Who else would they be looking at here? The plaintiff always has the burden. If that's not the sufficient answer, I can't do any more than that because it wasn't given. What the court would then be doing, though, in a civil case, is allowing instructional error by the defense, by one party or the other, to give them two bites at the apple. And that has always not been the rule. The concern I have is the burden of proof is such a fundamental instruction. Is there an obligation for the trial judge to at least give the burden of proof instruction? Until this case, no. I have not seen one. And looking at this case, if you'll honestly recall, this trial judge was very patient, kept telling the lawyers, look at the instructions. I want you to have them look at them before we go in. The defense lawyer encouraged her, let's just do the closing argument and get with the instructions afterwards because you can see from the record the lawyer was concerned that the jury was getting antsy and wanted out. So there's a reason for what he did. But if the court's going to go down that road, in a civil case where we're not talking about personal liberty, civil liberty, criminal imprisonment, the judge is going to become part of the case. I don't know why a lawyer would not want that burden of proof, but can we rule it out? I've heard some hypothesizing on the other side up here today. Can somebody say that the trial lawyers fought? Maybe the truth. It's a matter of strategy. You don't ask for a burden of proof instruction. Let's assume, Your Honor, that as they got through, the judge got through reading the jury instructions. Most of us would have, the alarm would have gone on. At that point, that lawyer, and this, I don't know that this is out of reach, could have said, this is a clear case. I'm not going to stop this right now. I think I'm winning this case. I don't want that jury mad at me. Let it go. That's not implausible. And so long as it's not implausible, do you really want to put, does this Court really want to put the burden on the trial judge to start making sure that the lawyers have put in every instruction? Because we're not talking about every instruction. A critical instruction. I'm not talking one instruction. And is this more critical than the other instructions? Is it more critical than the statutory instruction that sets up the burden? Again, keeping in mind that the jury heard it three times, and the courts have said, and Hawks from the case I cited, that were the lawyers, in fact, tell the jurors what it is? And in those cases, those were criminal cases where the issue was self-defense. That couldn't have been more critical because the only way that that imprisoned person was going to win was if the jury understood what self-defense was. And that instruction wasn't given. But the Court recalls the lawyer told the jury what the issue was, and the judges said that was enough. The only time they might have a problem with that would be a closed case. This wasn't a closed case. I don't think anybody suggested this was a closed case. It was a slam dunk. I could have tried this case and won the case. At the trial level, anyway. Again, going back, there was a special, there were some discussions, there was no special interrogatory, so you don't know why the jury did what we did. But the two-issue rule should stop the Court from going back to see whether or not, we were the prevailing party. If somebody wants to undo what was done, then it's up to that party to provide the special interrogatory to find out exactly what the jury did, were they confused. In this situation, the jury heard that the driver didn't think he, that the driver wasn't trained. If he had been trained, he wouldn't have done what he did, and we wouldn't have had the accident. Unless the Court has further questions, we simply ask for the appellate court to be reversed. Thank you, Mr. Ratzak. Thank you. The case number 126666, Fletcher McQueen v. Zlata M. Green, Pan-Ocean Engineering Company, will be taken under advisement as agenda number 16. Thank you, Mr. Ratzak, for your arguments, and also Ms. Barron for your arguments this morning.